IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

---

**B.B.** by his grandmother and next friend **L.B.**,
**A.B.** by his aunt and next friend **S.B.,** and
**J.W.** by his mother and next friend **K.W.,**
on behalf of themselves and all others
similarly situated,

              Plaintiffs,

v.

**Teresa Miller**, in her official capacity
as Secretary of Human Services of the
Commonwealth of Pennsylvania,

              Defendant.

---

Filed via ECF System
Civil Action No.

Class Action

## **COMPLAINT**

Plaintiffs B.B. by his grandmother and next friend L.B., A.B. by his aunt and next friend S.B., and J.W. by his mother and next friend K.W., on behalf of themselves and all others similarly situated, bring this class action against defendant Teresa Miller in her official capacity as Secretary of Human Services of the Commonwealth of Pennsylvania, and in support thereof allege as follows:

**I.     INTRODUCTION**

1. Plaintiffs are children from Pennsylvania who have physical disabilities that substantially limit their ability to walk and climb stairs. Each

plaintiff needs a wheelchair lift and/or stair glide that must be attached to, but can be removed from, a home to get in and out of, and/or around, his or her home.

2.   Plaintiffs are enrolled in Pennsylvania's Medical Assistance ("MA") program (also known as Medicaid) and receive their physical healthcare, including medical equipment, through managed care organizations ("MCOs") which contract with Defendant to provide these services.

3.   The lifts and stair glides needed by Plaintiffs meet the federal definition of equipment found at 42 C.F.R. § 440.70(b)(3), and as such, are Medicaid covered items under Title XIX of the Social Security Act (Title XIX), 42 U.S.C. § 1396 et seq.

4.   Defendant has a policy of denying MA coverage for items that must be attached to, but can be removed from, a home, such as a stair glide, wheelchair lift, ceiling lift, or metal ramp, ("removable mobility devices") on the theory that they are home modifications and not equipment.  Therefore, Plaintiffs and hundreds, if not thousands, of Pennsylvania children like them, are denied MA funding for medically necessary equipment to which they are entitled in violation of Title XIX.

5. Plaintiffs bring this action, through their next friends, on behalf of themselves and all other similarly situated children, seeking declaratory and injunctive relief.

## II. JURISDICTION AND VENUE

6. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343, this being a case arising under the laws of the United States.

7. Plaintiffs' claims are authorized by 42 U.S.C. § 1396 et seq., 42 U.S.C. § 1983, and 28 U.S.C. §§ 2201 and 2202.

8. Venue is appropriate in this district pursuant to 28 U.S.C. § 1391(b)(2) since the Defendant resides in this district and a substantial part of the events that give rise to this Complaint occurred in this district.

## III. PARTIES

9. B.B. is a 16-year-old boy from Braddock, Pennsylvania. He brings this case by and through his grandmother and next friend, L.B.

10. J.W. is a 16-year-old boy from Philadelphia, Pennsylvania. He brings this case by and through his mother and next friend, K.W.

11. A.B. is a 13-year-old boy from Yeadon, Pennsylvania. He brings this case by and through his aunt and next friend, S.B.

12. Defendant Teresa Miller is the Secretary of the Department of Human Services for the Commonwealth of Pennsylvania ("DHS"). DHS is

the single state agency responsible for the provision of MA services to eligible Pennsylvania residents.  See 42 U.S.C. § 1396a(a)(5) and 55 Pa. Code § 101.1(e).  Defendant is responsible to ensure that the MA program in Pennsylvania is operated in compliance with federal law.  Defendant Miller is sued in her official capacity for actions and omissions taken under color of state law.

**IV.   FACTS**

13.   B.B. is diagnosed with Duchenne Muscular Dystrophy, Cardiomyopathy, and Intellectual Disability.  He is non-ambulatory and uses a wheelchair.  His physical condition is getting progressively worse over time.

14.   There are six steps inside B.B.'s apartment building leading up to his front door.  B.B. needs an inclined wheelchair lift for the steps because he cannot climb them on his own.  He lives with his grandmother, weighs nearly 180 pounds, and cannot get out of his house independently.

15.   B.B. is enrolled in Defendant's MA program and is enrolled in one of Defendant's contracted MCOs, UPMC.

16.   In May of 2018, B.B.'s physician wrote a letter concluding that an inclined wheelchair lift to enable B.B. to get in and out of his home is medically necessary, which was submitted to UPMC.

17. UPMC denied B.B.'s request for MA coverage of the lift, claiming that it is a home modification and that home modifications are not covered by the MA program.

18. The requested wheelchair lift is an item that is primarily and customarily used to serve a medical purpose.

19. The requested wheelchair lift is an item that is not generally useful to a person without a disability.

20. The requested wheelchair lift is an item that can withstand repeated use.

21. The requested wheelchair lift is an item that is reusable.

22. The requested wheelchair lift is an item that is removable.

23. A.B. has a diagnosis of Duchenne Muscular Dystrophy, which severely impacts his ability to walk and climb. He cannot climb stairs on his own, uses a scooter to ambulate longer distances, and will soon be unable to walk at all.

24. A.B. is enrolled in Defendant's MA program and is enrolled in one of its contracted MCOs, United Healthcare.

25. A.B.'s home can only be accessed by going up steps to his front porch. He cannot get in and out of his home independently.

5

26. In March of 2018 and again in May of 2018, A.B.'s doctor wrote a letter of medical necessity requesting a vertical wheelchair lift for the entrance to A.B.'s home.

27. The doctor's office submitted both requests to United Healthcare and they were denied.

28. The requested wheelchair lift is an item that is primarily and customarily used to serve a medical purpose.

29. The requested wheelchair lift is an item that is not generally useful to a person without a disability.

30. The requested wheelchair lift is an item that can withstand repeated use.

31. The requested wheelchair lift is an item that is reusable.

32. The requested wheelchair lift is an item that is removable.

33. A.B. also uses a stair glide to get to the second floor of his home where his bedroom and bathroom are located. In 2017, he obtained a grant from Achieva Charitable Trust to fund the stair glide because his family was advised that MA would not cover it.

34. On information and belief, if Achieva were reimbursed by defendant for the stair glide, Achieva would make the reimbursed funds

available to A.B. for other disability-related needs that cannot, unlike the stair glide, be properly covered by MA.

35. J.W. has many diagnoses including neuromuscular scoliosis, cerebral palsy, and static encephalopathy with seizures. He cannot walk or climb stairs on his own, uses a wheelchair, and needs assistance with all activities of daily living.

36. J.W. lives in a home with numerous steps to enter and currently must be carried in and out of the home.

37. J.W. lives in a home with the bedrooms located only on the second floor. He currently lives in the first-floor dining room where he has little privacy or dignity because he cannot access the second-floor bedrooms.

38. J.W. is enrolled in Defendant's MA program and is enrolled in one of Defendant's contracted MCOs, Keystone First.

39. In April of 2018, J.W.'s physician wrote a letter of medical necessity requesting a vertical wheelchair lift to enable J.W. to get in and out of his home.

40. The letter of medical necessity was submitted to Keystone First.

41. In April of 2018, Keystone First denied J.W.'s request for a vertical wheelchair lift, stating that a vertical wheelchair lift is a home

7

modification and that "[h]ome modifications are not covered by the Pennsylvania Medical Assistance Program."

42. In May of 2018, J.W.'s physician wrote a letter of medical necessity requesting a stair glide to enable J.W. to get up and down the stairs of his home to access his bedroom.

43. Even though the letter of medical necessity was submitted in mid-May, Keystone First has not approved J.W.'s request for a stair glide.

44. The requested wheelchair lift and stair glide are items that are primarily and customarily used to serve a medical purpose.

45. The requested wheelchair lift and stair glide are items that are not generally useful to a person without a disability.

46. The requested wheelchair lift and stair glide are items that can withstand repeated use.

47. The requested wheelchair lift and stair glide are items that are reusable.

48. The requested wheelchair lift and stair glide are items that are removable.

49. The MA program, authorized by Title XIX of the Social Security Act, 42 U.S.C. § 1396 et seq., is a joint federal-state program. It is a cost-sharing arrangement under which the federal government reimburses more

8

than half of the expenditures incurred by states that elect to furnish MA to eligible individuals.

50. States are not required to participate in the MA program but, if they choose to do so, they must comply with Title XIX and its implementing regulations. Pennsylvania has chosen to participate in the MA program.

51. Title XIX mandates that a state MA program cover certain specified health care services. See 42 U.S.C. § 1396a(a)(10)(A)(i). For persons under 21, those services include Early and Periodic Screening, Diagnostic and Treatment ("EPSDT") services. See 42 U.S.C. §§ 1396d(a)(4)(B) and 1396d(r)(5).

52. Title XIX mandates that the states inform all eligible children of the availability of EPSDT services and ensure the provision of such services. 42 U.S.C. §§ 1396a(a)(43)(A) and (C).

53. EPSDT services include all necessary home health services. See 42 U.S.C. §§ 1396d(a)(7) and 1396d(r)(5).

54. Federal regulations, at 42 C.F.R. § 440.70(b)(3), make clear that home health services include equipment and appliances "suitable for use in any setting in which normal life activities take place ..." and define "equipment and appliances" as follows:

> (ii) Equipment and appliances are items that are primarily and customarily used to serve a medical

9

> purpose, generally are not useful to an individual in the absence of a disability, illness or injury, can withstand repeated use, and can be reusable or removable. State Medicaid coverage of equipment and appliances is not restricted to the items covered as durable medical equipment in the Medicare program.

55. Defendant has a policy of not providing MA coverage through the EPSDT entitlement for removable mobility devices in violation of federal law.

56. Defendant only provides coverage for removable mobility devices as "home accessibility adaptations" or "home modifications" through certain MA-funded Home and Community Based Service ("HCBS") waiver programs.

57. HCBS waivers are not available at all to many, many MA-enrolled children who use wheelchairs, including all those who are under 18-years-old and do not, and are not expected to, have a diagnosis of Intellectual Disability or Autism, as well as those with Intellectual Disability or Autism whose need for services is determined to be less of an emergency than others on the state's emergency waiting list.

58. For those children who are lucky enough to be enrolled in a HCBS waiver, using waiver funds for equipment means less funds available for other needed items or services not covered by EPSDT due to

financial caps for home adaptations and/or for all waiver services that are imposed by the waiver rules.

59. Defendant's policy of not covering removable mobility devices is passed on to the many MCOs with whom she contracts to provide children's healthcare and medical equipment.

60. Defendant and her contracted MCOs have led hospitals, equipment vendors and families to believe that removable mobility devices are not covered EPSDT services.

61. Many families do not request MA coverage for needed removable mobility devices because they have been told that such coverage is not available.

## V.  Class Allegations

62. Plaintiffs bring this action on behalf of themselves and all other MA-enrolled persons in the Commonwealth under the age of 21 with a mobility impairment, now or in the future, for whom a device that must be attached to, but can be removed from, a home, such as a stair glide, wheelchair lift, ceiling lift, or metal ramp, is medically necessary.

63. The size of the class makes joinder impracticable.  There are approximately 8,000-13,000 children with mobility disabilities enrolled in Defendant's MA program.  All of these children could, now or in the future,

11

need removable mobility devices, but even if only two percent of these children need them, the class would be in the hundreds.

64. Because the class also includes future members, the number of potential class members is in the thousands.

65. There are questions of fact and law common to class members, including, but not limited to:

> a. whether items necessary for mobility and access that must be attached to, but can be removed from a home, meet the definition of covered items for children under Title XIX;
>
> b. whether Defendant's MA EPSDT program fails to provide medically necessary equipment; and
>
> c. if so, whether such failure violates Title XIX of the Social Security Act.

66. The claims of the Plaintiffs are typical of those of all putative class members. B.B., J.W., and A.B. are youths with disabilities that severely limit their abilities to walk and climb such that they need removable mobility devices to access important life activities. They are enrolled in Defendant's MA program and have been denied funding for the equipment they need because Defendant refuses to provide coverage for

items that must be attached to a home. All putative class members are or will in the future be in similar situations due to Defendant's policy.

67. The named Plaintiffs will adequately protect the interests of the class. They have no interests which conflict with other class members. Plaintiffs' counsel is experienced in litigating class actions including enforcement of Title XIX.

68. Defendant has acted or refused to act on grounds generally applicable to the class, thereby making appropriate injunctive and declaratory relief with respect to the class as a whole.

## VI. CLAIM I - Failure to Provide EPSDT Services

69. Paragraphs 1 through 68 are incorporated herein.

70. Title XIX mandates that a state MA program cover all medically necessary home health services for children. 42 U.S.C. §§ 1396a(a)(10)(A)(i), 1396d(a)(4)(b), 1396d(a)(7), 1396d(r)(5), and 1396a(a)(43)(C).

71. Home health services include medical equipment such as stair glides, wheelchair lifts, ceiling lifts, and metal accessibility ramps. 42 C.F.R § 440.70(b)(3).

13

72. Defendant has a policy of denying coverage for medically necessary devices that must be attached to, but can be removed from, a home, such as a stair glide, wheelchair lift, ceiling lift, or metal ramp.

73. Devices that must be attached to, but can be removed from, a home, such as a stair glide, wheelchair lift, ceiling lift, or metal ramp, are medically necessary equipment for B.B., J.W., A.B., and purported class members.

74. Defendant is denying Plaintiffs and the putative class the medically necessary equipment to which they are entitled in violation of 42 U.S.C. §§ 1396a(a)(10)(A)(i), 1396a(a)(43)(C), and 1983.

## VII. CLAIM II - Failure to Inform Youth of the Availability of EPSDT Services

75. Paragraphs 1 through 74 are incorporated herein.

76. Title XIX mandates that a state MA program inform all eligible youth of the availability of EPSDT services.  42 U.S.C. § 1396a(a)(43)(A).

77. Defendant, directly and through the MCOs with which her department contracts, has led youth, hospitals, equipment vendors, families, advocates, and others to believe that devices that must be attached to, but can be removed from, a home, such as a stair glide, wheelchair lift, ceiling lift, or metal ramp, are not covered under EPSDT.

78. Defendant has violated 42 U.S.C. § 1396a(a)(43)(A).

14

WHEREFORE, Plaintiffs respectfully request that the Court award the following relief:

1) exercise jurisdiction over this action;

2) certify the case as a class action;

3) issue appropriate declaratory relief declaring that medically necessary equipment that must be attached to, but can be removed from, a home, such as a stair glide, wheelchair lift, ceiling lift, or metal ramp, are covered items for children enrolled in MA;

4) issue injunctive relief including enjoining Defendant to authorize MA funding for such items when determined to be medically necessary for an MA enrolled person under the age of 21, and enjoining defendant to make the availability of such coverage known to families of enrolled children pursuant to 42 U.S.C. § 1396a(a)(43)(A);

5) issue injunctive relief including enjoining Defendant to authorize MA funding for the lifts and stair glides requested by named Plaintiffs; and

6) grant such other relief as may be appropriate, including awarding reasonable attorneys' fees, litigation expenses, and costs pursuant to 42 U.S.C. § 1988.

Respectfully submitted,

By: /s/ Rachel Mann
Rachel Mann (PA I.D. 49267)
Dynah Haubert (PA I.D. 313862)
Disability Rights Pennsylvania
1315 Walnut Street, Suite 500
Philadelphia, PA 19107-4798
(215) 238-8070
(215) 772-3126 (fax)
rmann@disabilityrightspa.org
dhaubert@disabilityrightspa.org

Counsel for Plaintiffs