IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **B.B.**, by his grandmother and next friend, **L.B.**, **J.W.**, by his mother and next friend, **K.W.**, and **A.B.**, by his aunt and next friend, **S.B.**, on behalf of themselves and all others similarly situated, | : : : : : : |
| Plaintiff, v. | : Filed via ECF System : Civil Action No. 1:18-cv- : 01257-JEJ : (Judge Jones) |
| **Teresa Miller**, in her official capacity as Secretary of Human Services of the Commonwealth of Pennsylvania, | : : Class Action : : |
| Defendant. | : : |

**REPLY BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

Plaintiffs are entitled to summary judgment in their favor because there are no material facts in dispute and Defendant has conceded that she violated the law. Her stated intention to comply with the law in the future by implementing a new policy that is still in development, and is unlikely to fully meet her legal obligations, does not dispose of this action, nor deprive this Court of its authority to declare her actions unlawful and grant relief. Further, while there is a dispute over the full scope of coverage required, that dispute is over the law, not the facts. Even accepting all the material facts and all reasonable inferences therefrom in the

light most favorable to Defendant, Plaintiffs are entitled to the declaratory and injunctive relief they have requested.

## I. PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT

Summary judgment should be granted as Defendant has acknowledged that her long-standing policy and practice of across-the-board denials of the equipment at issue in this case violated federal regulations promulgated in 2016. Defendant's Brief in Opposition ("Opp.") at 10. Defendant's argument in opposition to summary judgment does not make sense. She argues that "the Department is developing a revised policy for the coverage of wheelchair lifts, stair glides, ceiling lifts, metal accessibility ramps, and similar items, consistent with the guidance it received from CMS. Based on the revised policy, Plaintiffs have not demonstrated a likelihood of actual success on the merits . . . ." Based on her own words above, the policy that she says should determine the outcome of the case is still under development. Defendant notes that the yet-to-be-effective "draft" policy has not been shared with beneficiaries or providers because it "could change." Opp. at 20. She has not presented evidence that she reversed a single one of the across-the-board denials she acknowledges issuing since the federal regulations were revised (SUF 56) or that she has ever approved coverage of a single piece of the relevant equipment.

Even if Defendant has ceased implementing her illegal policies, as this Court stated in *Benjamin v. Department of Public Welfare of Pennsylvania,* "voluntary cessation of an illegal practice does not . . . automatically defeat liability for that practice, especially where . . . the cessation of the practice (here, the adoption of a stated practice) has *not* 'completely and irrevocably eradicated the effects of the alleged violation.'" *Benjamin v. Dep't of Pub. Welfare of Penn.,* 768 F. Supp. 2d 747, 756 (M.D. Pa. 2011) (quoting *DeJohn v. Temple Univ.,* 537 F.3d 301, 309–11 (3d Cir. 2008)). Defendant admits that her unlawful across-the-board denial policy was in place when Plaintiffs' Complaint was filed. Opp. at 10. Defendant's intent to develop a new policy that may or may not be in compliance with the applicable law does not in any way divest this Court of jurisdiction.

Further, the United States Supreme Court has long held that voluntary cessation of a challenged practice does not moot a claim unless "subsequent events ma[ke] it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,* 528 U.S. 167, 189 (2000). The burden of establishing that a violation could not recur is a heavy one and one that falls on defendant. *Trinity Lutheran Church of Columbia, Inc. v. Comer,* 137 S. Ct. 2012, 2019 n.1 (2017) ("The [Missouri Department of Natural Resources] has not carried the 'heavy burden' of making 'absolutely clear' that it could not revert to its policy of

3

excluding religious organizations.") (quoting *Friends of the Earth,* 528 U.S. at 189)). Defendant has not met this burden. Even if Defendant's developing revised policy would resolve all the issues in the case (which, as explained in sections II through IV below, it would not), Plaintiffs have a clear right to relief.

## II. DEFENDANT MUST NOT BE PERMITTED TO CONTINUE TO IMPOSE UNLAWFUL RESTRICTIONS ON EQUIPMENT FOR CHILDREN

While admitting that her policy of across-the-board denials was unlawful, Defendant argues that she is developing a new policy "exercising the flexibility" she now believes she has to cover the equipment. Opp. at 8. Defendant states that her Medical Assistance ("MA") program will cover the equipment in "appropriate circumstances" including "installation of the equipment to the extent that it does not require modification to the home." Opp. at 12-13 and 16-17. Without identifying which activities she still considers to be home modifications, Defendant states she is revising her policy to now cover the cost of "most" of the activities that she had previously identified as home modifications during discovery. SUF 73 and response. While not providing any clarity or assurance of future policy or practice, Defendant has all but conceded that Plaintiffs are entitled to at least "most" of what they have requested. With respect to what remains, however, Defendant's flexibility is not so broad as to permit her to deny medically necessary equipment even if modifications to the home are necessary for its installation.

4

Defendant does not put forth any factual evidence regarding home modifications or installation to support her position. Instead, Defendant bases her entire argument regarding home modifications on statements made by CMS in an email on June 6, 2019. She does not cite a single case to support her position that home modifications needed to install equipment are not covered EPSDT services. Nor does she cite any cases saying that she has the flexibility to impose limitations on a medically necessary EPSDT service. The June 6 email is not authoritative on the scope of coverage of equipment specifically for children,[1] nor does it support her proposed policy of excluding home modifications as part of installation.

### a. CMS Has Not Rejected Coverage of Modifications to a Home in Order to Install Equipment

The CMS email not only fails to support Defendant's position that home modifications cannot or should not be covered under the home health benefit, but,

---

[1] The CMS email is not entitled to deference as an official agency statement with regard to the scope of coverage for children. In *Kisor v. Wilkie*, 139 S. Ct. 2400 (2019), the Supreme Court explained in detail when a federal agency is to be afforded deference in interpreting its own regulations: the regulation must be truly ambiguous; the statement must be an authoritative opinion of the agency itself; the ambiguity must relate to an area of special expertise of the agency such that the agency is in a better position than the court to interpret the regulation; and the statement must reflect the agency's fair and considered judgment on the issue in question. *Id.* at 2415-18. Only if the statement meets all of these criteria is it entitled to deference. Otherwise, it may be considered to the extent it is persuasive, but no more. *Id.* at 2414. Even if the June 6 email were to meet all the other criteria, as explained further at pages 7-8, the email does not reflect a considered judgment about the unique scope of coverage for children as it fails to even mention EPSDT.

in fact, undermines it. Defendant presented CMS with a list of activities that it proposed to exclude from coverage on the grounds that those activities constituted home modifications and as such could not be covered as part of the installation of medically necessary equipment and asked CMS whether the Department was correct about any or all of them. DCUF 32 and Def.'s Ex. H. The list included "modification to the property, space or place of residence" as well as specific examples such as "adding a deck." Def.'s Ex. H. In response, CMS did not identify a single listed item that had to be excluded from installation coverage, stating instead that DHS could impose limitations *provided that the limitations did not unreasonably restrict access to the equipment*. DCUF 33 and Def.'s Ex. H.

CMS apparently did not consider whether an installation activity included a home modification to be determinative on the issue of coverage of installation costs. It was only in response to a different question – not about installation at all, but rather asking for examples of removable or reusable equipment – that CMS quoted the language from the preamble to the regulations stating they "do not regard [the new regulatory] definition to expand the scope of medical equipment to include environmental or structural housing modifications." Def.'s Ex. H. Saying that home modifications such as widened doorways are not examples of equipment is very different from saying that home modifications cannot be part of the installation of an item that does qualify as equipment. If CMS intended to exclude

6

home modifications as an allowable component of installation of equipment, they surely would have said so in response to Defendant's explicit question regarding "modifications to the …place of residence" as a coverable installation cost. They did not. CMS thus confirmed that the Department can cover everything necessary to the proper installation of usable equipment.

  b. **Defendant Does Not Have the Flexibility to Deny Coverage of Necessary Installation Costs for Children**

To the extent that CMS indicated that states have flexibility in defining the home health benefit, the email cannot be read to limit medically necessary services to children. CMS was responding specifically to a draft *state plan amendment* – a document which typically contains the services and limits a state chooses to apply as part of its state plan. But under the EPSDT provision, children are entitled to medically necessary services "whether or not such services are covered under the State plan" (42 U.S.C. § 1396d(r)(5)) and "regardless of any restrictions that states may impose on coverage for adult services, as long as those services *could* be covered in the State Plan." Centers for Medicare and Medicaid Servs., *EPSDT - A Guide for States: Coverage in the Medicaid Benefit for Children and Adolescents* 10 (June 2014), https://medicaid.gov/medicaid/benefits/downloads/epsdt_coverage_guide.pdf. EPSDT is a subject that CMS did not address in the informal email but did address in the official publication cited above. While states have some flexibility in how

7

they provide medically necessary services – e.g., how to ensure use of the least costly, equally effective, available service, or whether prior authorization will be required (*id.* at 23-25) – states do not have the flexibility to deny a coverable service to the full extent that it is medically necessary for an individual child.[2] If a service can be covered in the state plan, it must be covered for children.[3]

---

[2]   Defendant misquotes CMS's position with regard to the limitations that can be applied to children versus adults, adding words to the CMS quote that are not there. CMS stated only that "Home Health is a mandatory 1905(a) benefit and limiting the provision of services to individuals of a certain age is not permissible" and "Home Health is a mandatory benefit and may not be limited to certain age groups." In other words, adults are entitled to equipment too. They did not say "the scope of this service must be the same for adults and children," as reported by Defendant. Compare Defendant's Brief in Opposition at 15 to Def.'s Ex. H. As Defendant herself points out, other mandatory home health benefits have limits for adults (such as the number of visits that will be covered) that are not applied to children. Defendant's Brief in Opposition at 15. In any event, whether Defendant's proposed limitations can be applied to adults is not the subject of this case.

[3]   At page 14-15 of her brief in opposition Defendant takes issue with Plaintiffs argument that states must cover "any medical assistance *that a state is permitted to cover* under 1396d(a) of the Medicaid Act." Apart from the fact that the words are not those of Plaintiffs but a direct quote from the Fifth Circuit Court of Appeals in *S.D. ex rel. Dickson v. Hood*, 391 F.3d 581, 593 (5th Cir. 2004), Plaintiffs do not see the distinction between those words and the "contrary" words chosen by Defendant – "the EPSDT provision requires states to cover all medically necessary services that are included within the categories of mandatory and optional services listed in section 1905(a) regardless of whether such services are covered under the state plan." The statutory references cited in each are the same – Section 1905(a) was codified at 42 U.S.C. § 1396d(a) (not 1396d(d) as mistyped by Defendant). Both say all services included in that provision must be covered for children.

### c.   The Federal Rule Change was Meant to Ensure that Equipment Was Not Limited to Waiver Recipients

Defendant argues that the inclusion of home modifications in its home and community-based waivers supports her position of non-coverage under EPSDT. Opp. at 17-18. But "home modifications" in her waivers include wheelchair lifts and other equipment that attaches to a home, which she now agrees are covered EPSDT services. Further, CMS has made clear that one reason for the 2016 rule change was precisely to ensure that coverage of medical supplies, equipment and appliances would not be restricted to waiver recipients. Medicaid Program; Face-to-Face Requirements for Home Health Services; Policy Changes and Clarifications Related to Home Health, 81 Fed. Reg. 5529, 5533 (Feb. 2, 2016). While waivers may allow the provision of services not otherwise covered as medical assistance, waivers primarily allow states to provide *optional* MA services, or to exceed state plan limits for adults on mandatory MA services, to people at risk of institutionalization while "waiving" the requirement that they provide the service statewide and to all otherwise eligible recipients who need it and allowing them to use different financial eligibility criteria. See 42 U.S.C. § 1396n(c)(3). This is evident from the overlap between the list of waiver services identified in 42 U.S.C. § 1396n(c) and the medical assistance definitions in § 1396d(a) (for example, "case management services, homemaker/home health aide services and personal care services," listed at § 1396n(c)(4)(B) as compared to §

9

1396d(a)(7) (home health), (19) (case management) and (24) (personal care)). Thus, the inclusion of a service in the waiver in no way means that it is not otherwise covered by EPSDT.

### d. Plaintiffs' Reliance on a Medical Assistance Service Category Not Cited in Their Complaint is Proper

Finally, the CMS email addresses only coverage under the home health benefit, not the broader EPSDT benefit, which includes 42 U.S.C. § 1396d(a)(13). Defendant does not provide an argument against coverage under that category of MA, but argues instead that Plaintiffs cannot raise it because it was not included in their Complaint. Plaintiffs' reliance on 42 U.S.C. § 1396d(a)(13) is proper, and Defendant's argument otherwise rests on a single, inapposite case. In *Liberty Lincoln-Mercury, Inc. v. Ford Motor Co.*, 676 F.3d 318, 326 (3d Cir. 2012), plaintiffs' motion for summary judgment raised for the first time a claim that the defendant failed to reimburse the plaintiff car dealers for certain engine and transmission repairs in violation of a different provision of the statute than that upon which the main claim was based. The plaintiffs were alleging different facts that had not been pleaded in their complaint and had not been the subject of discovery. The court stated, "[W]e cannot find any language in the complaint that alleges Ford's complete failure to pay any amount for certain engine and transmission assemblies." *Id*. The court held that summary judgment was

precluded because plaintiffs failed to provide notice to Ford regarding its alleged failure to reimburse the dealers for these repairs. *Id.*

This case presents an entirely different scenario. Plaintiffs allege no new facts and no new claims. In the Complaint, Plaintiffs alleged that Defendant failed to provide MA coverage for certain medically necessary equipment, in violation of two provisions of Title XIX – 42 U.S.C. § 1396a(a)(10)(A) and (a)(43)(C) – both of which entitle Plaintiffs to all necessary "medical assistance" as defined in § 1396d(a). In citing § 1396d(a)(13), an additional service category not cited in the Complaint, Plaintiffs have raised an additional argument in support of the original claims, not a new claim, and certainly not a new set of facts. Neither § 1396d(a)(7), the subsection referenced in the Complaint identifying home health services as part of MA, nor § 1396d(a)(13), identifying a broader category of MA, are independently enforceable. Rather, they are parts of the definition of the two enforceable statutory provisions pleaded in the Complaint. The Defendant has had fair notice of the legal claims in this case and of the factual allegation that she failed to provide the equipment, which has at all times been the focus of the case.

### III. DEFENDANT MISCHARACTERIZES PLAINTIFFS' POSITION REGARDING "APPROPRIATE CIRCUMSTANCES" FOR COVERAGE OF THE EQUIPMENT

As noted at page 8 above, Plaintiffs do not disagree with the fundamental concept that Defendant can institute utilization guidelines to ensure that services

11

are medically necessary and provided in a cost effective and efficient manner. Rather, Plaintiffs take issue with guidelines that would result in the denial by the MA program of medically necessary equipment. Plaintiffs' proposed Order does not preclude Defendant from developing appropriate guidelines. The proposed Order requires coverage for medically necessary equipment and clarifies the definition of "removable or reusable" because Defendant's previous definition could have resulted in unlawful denials of medically necessary equipment.

Defendant does not defend her previous position requiring the equipment to be both removable without voiding a warranty and reusable. Instead she states, "While the Department disagrees with Plaintiffs' interpretation, the current proposed policy does not include this language." Opp. at n.2. Given that her currently proposed policy "could change" (Opp. at 22) her argument is far from reassuring. A declaration from the Court is necessary. Plaintiffs rely on the arguments in their brief in support on this issue.

## IV.   DEFENDANT HAS VIOLATED THE NOTICE REQUIREMENT OF 42 U.S.C. § 1396a(a)(43)(A)

Defendant readily admits that she has not informed families about the availability of the equipment at issue in this case through EPSDT and has delayed doing so because she is still developing the policy and it could change. Opp. at 19-20. Neither her case-by-case review of requests for the equipment or her intentions of, sometime in the future, informing families of its availability constitute the

12

notice of availability of EPSDT services that the law requires, including where and how to obtain services (42 C.F.R. § 441.56(a)(2)(ii)), correcting outdated information previously disseminated (*See J.E. v. Wong,* No. 14-00399 HG-KJM, 2016 WL 4275590, at *17 (D. Haw. Aug. 12, 2016)), or ensuring notice in fact reaches children and families. *Rosie D. v. Romney,* 410 F. Supp. 2d 18, 26-27 (D. Mass. 2006). Plaintiffs are, therefore, entitled to summary judgment.

## V.    THE REQUESTED INJUNCTION IS TAILORED TO MEET THE NEED FOR RELIEF

As explained in full in Plaintiffs' opening brief, Plaintiffs have established all of the elements required for permanent injunctive relief. "[E]quitable relief should be 'dictated by the extent of the violation established.'" *City of Phila. v. Attorney Gen. of U.S.,* 916 F.3d 276, 292 (3d Cir. 2019) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979)). While equitable relief should "not be 'more burdensome to the defendant than necessary to provide complete relief to plaintiffs[,]'" *id*. (quoting *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co.,* 290 F.3d 578, 598 (3d Cir. 2002)), it should be broad enough to ensure the provision of complete relief. *See Pennsylvania v. President of the United States*, 930 F.3d. 543, 576 (3d. Cir. 2019) (concluding that "a nationwide injunction is necessary to provide the States complete relief.") Plaintiffs' requested injunction is both necessary and narrowly tailored.

The Plaintiff class cannot get complete relief from Defendant's unlawful policy of across-the-board denials without receiving notice that the policy has changed. Nor can Plaintiffs get complete relief if they cannot access available providers of the newly recognized service. Defendant's statement that she "will enroll qualified suppliers" is an acknowledgment that it needs to be done. Opp. at 9. Defendant does not state when she will notify families or enroll providers. Clearly, in addition to an injunction to provide coverage for the medically necessary equipment, an injunction regarding notice and enrollment of providers is required. Finally, Defendant objects to an injunction requiring her to provide Plaintiffs' counsel with copies of notices of denials and related documentation for a one-year period. A short period of monitoring is an appropriate manner of ensuring compliance with the injunction such that the changes required for relief occur in a timely and effective manner and that Defendant is ensuring that the MA managed care organizations to whom requests for equipment are submitted and who are responsible for making individual decisions on authorization of services understand and carry out the full scope of the injunction.

None of the requested relief would be overly burdensome for Defendant. As noted above, providing notice regarding EPSDT services, including changes in policy, is an existing obligation of Defendant. Similarly, ensuring adequate vendors to provide covered equipment is Defendant's obligation under Title XIX

14

and one she must fulfill for any MA service she provides. *See* 42 U.S.C. § 1396u-2(b)(5)(B) and (c)(1)(A)(i). The monitoring provision seeking copies of documents relating to denials of equipment is not unduly burdensome. All denials of equipment are required to be issued in writing with reasons and with documentation made available to individual recipients. 42 C.F.R. § 438.404. Plaintiffs seek copies of documents that the Defendant and the MA managed care organizations should have readily available and to which class members are legally entitled. Providing notice, ensuring adequate providers, and monitoring for one year are necessary to provide Plaintiffs relief and not unduly burdensome to Defendant.

    For the reasons discussed above, Plaintiffs ask the Court to grant their Motion for Summary Judgment and issue the requested relief.

                                                        Respectfully submitted,

Dated: September 6, 2019              By: /s/ Rachel Mann
                                                    Rachel Mann (PA I.D. 49267)
                                                    Dynah Haubert (PA I.D. 313862)
                                                    Disability Rights Pennsylvania
                                                    1800 JFK Blvd., Suite 900
                                                    Philadelphia, PA 19103
                                                    (215) 238-8070
                                                    (215) 772-3126 (fax)
                                                    rmann@disabilityrightspa.org
                                                    dhaubert@disabilityrightspa.org

                                                    Counsel for Plaintiffs